JOSEPH BERNARD *v.* W. S. SCOTT—T. J. SCOTT, Intervenor.

Where a deed was executed in the State of Mississippi in the form adopted in a common law State to create a mortgage there, and real estate situated in Louisiana was embraced in the deed, *Held:* That the instrument must be considered as having but a single aspect, and it was not reasonable to suppose that the parties contemplated a mortgage as to the property situated in Mississippi, and a sale as to the property in Louisiana.

From the fact that the parties to the deed were both residents in States where the common law prevails, and that the instrument was executed in a common law State in the form of a mortgage, part of the property to be affected by the instrument being situated in that State, it must be considered that it was the intention of the parties to create a mortgage to secure the payment of a sum of money.

When the purchaser of property was fully informed of the title of his vendor, and that he claimed under a deed executed in another State and embracing property situated there as well as in this State, he was bound to enquire what effect the law would give to such a deed.

APPEAL from the District Court of East Baton Rouge, *Robertson,* J.

*J. W. Seymour,* for plaintiff. *F. R. Brunot* and *Clarke & Bayne,* for defendants and appellants.

MERRICK, C. J. This is an action of partition. The plaintiff claims title to one-fourth of a tract of land situated in the parish of East Baton Rouge, by mesne conveyance from *Thomas J. Scott,* who was the owner of one-fourth in common with his three brothers, *William S. Scott, John Scott* and *Samuel Scott. Thomas J. Scott* has intervened in the suit, denying plaintiff's title and praying that his demand be rejected. The defendants answer by a general denial. The court having maintained the plaintiff's title, they have appealed.

The only question raised in the case is one of construction of a deed from *Thomas J. Scott* to one *Ruderstein.* The plaintiff contends that it is a sale under a condition which has become absolute—the defendant that it is a mortgage.

The instrument itself is executed by *Scott* alone, and acknowledged before a Justice of the Peace of Warren county and State of Mississippi. It purports to be executed on the 22d day of May, 1841, between *Thomas J. Scott,* of the city of Vicksburg, Mississippi, on the one part, and *John G. Ruderstein,* of the city of Cincinnati, of the State of Ohio, of the other part.

The consideration specified is the nominal sum of $6000. The property conveyed consisted of certain property in and adjoining Vicksburg, and property in Louisiana. The instrument commencing at the *habendum,* is as follows: "To have and to hold the aforesaid tract and lots of land unto him, the said *John G. Ruderstein* and his heirs, executors and assigns forever, and the said *Thomas J. Scott* warrants and defends the title of the aforesaid lots or parcels of land with all appurtenances, against the claims of all persons whatsoever. But with this reserve, that the said *John G. Ruderstein* holds two bills of exchange, one for $3162 79, drawn by said *Ruderstein* in favor of *J. C. Bull,* dated March 12th, 1840, and payable 90 days after date, the other for $3000, same date and payable 60 days after date, drawn by same in favor of same, both of which bills are indorsed by said *Bull,* and accepted by said *Thomas J. Scott.* Now, if the said *Thomas J. Scott* shall well and truly pay or cause to be paid to the said *Ruderstein* the amount of said two bills of exchange, then

62

BERNARD
*v.*
SCOTT.

the above conveyance to be null and void, otherwise to remain in full force and virtue."

This instrument must be considered as having but a single aspect. It was intended either as a conditional sale or as a common law mortgage to secure the payment of *Thomas J. Scott's* acceptances. For it is not reasonable to suppose that the parties contemplated a mortgage as to the property situated in Mississippi, and a sale as to the property in Louisiana; that the debt should be wholly or partially paid by the foreclosure of the mortgage and the sale of the property in Mississippi, and that there should also be a forfeiture of the property in Louisiana by the non-payment of the whole price. As the parties to the instrument were both resident in States where the common law prevails, as the instrument was executed in a common law State and in the form adopted to create a mortgage there, and as a part of the property subject to the action of the instrument was situated in the State of Mississippi, there can be no question that the original parties to the act, the grantor and grantee, intended to create a mortgage to secure the payment of a sum of money. 2 Blackstone Com., 158, 159 ; Burrill's Law Dic. Equity of Redemption ; 4 Kent Com., 159. As between themselves, therefore, there is no doubt what effect ought to be given to the instrument.

But was *Ruderstein's* vendee, *Shalor*, a resident of Louisiana, bound to know the law of Mississippi and what construction ought to be put upon the instrument as between the parties ? The power of attorney under which *Cook* acted for *Ruderstein* expressly refers to his title from *Thomas J. Scott*, and empowers the attorney in fact to sell all his right, title and interest in and to the property in controversy, "the same conveyed to him by *Thomas J. Scott*, by deed dated Vicksburg, on ——— of ——— 1841, the particular description of which will appear by reference to said deed, on record in the office of the Parish Judge of said parish," East Baton Rouge.

The purchaser was, therefore, fully informed of the title under which *Ruderstein* held, and as it covered property both in the States of Mississippi and Louisiana, he was bound to inquire what effect the law would give to the same. Similar instruments have been held to be mortgages of property situated in a common law State and afterwards removed here. See *Smoot* v. *Russell*, 1 N. S. 522. In the case of *Hayden* v. *Nutt*, 4 An. 71, the court recognized an instrument similar in form, executed in the State of Mississippi, and operating on the undivided interest of the grantor in a tract of land situated in Louisiana as a mortgage. We think the instrument relied on as the basis of the plaintiff's title can have no greater effect.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment against the demand of the plaintiff and in favor of the defendants, and that the plaintiff pay the costs of both courts.

COLE, J., concurring. The question in this case is whether this act is a sale or mortgage, and in order to determine this another question must be solved, and that is, whether its character is to be determined by the laws of Louisiana or Mississippi.

Art. 10 C. C. enunciates the principle, that "the effect of Acts passed in one country to have effect in another country is regulated by the laws of the country where they are to have effect."

This Article does not speak of the *interpretation* of Acts as to their *character*, *form* and *nature*, but as to their effect.

Its phraseology shows that the meaning of this Article is, that the Act passed in the foreign country is taken as a perfect manifestation of the will of the contracting parties, which must be executed in accordance with the laws of Louisiana; that is, if there is anything in the Act repugnant to our laws it will be void, but so far as it is in harmony with them it will be carried into effect. The preceding part of Article 10 ordains, that the *form* and effects of Acts are to be determined by the laws of the country where they are passed; then follows the part of the Article now under consideration: "the *effect* of Acts passed in one country to have effect in another country is regulated by the laws of the country where they are to have effect."

The word "Form" is omitted in this part of the Article, and the law-giver speaks of an "Act passed," that is, of a contract good between the parties, and perfect according to the laws of the country where it is made."

The law-giver means that taking this Act, which is good between the parties in a foreign State and framed according to those laws, so as to give effect to such an Act in that State, yet the power of executing it in Louisiana will depend on the conformity of its intended effect with the provisions of our law; the concluding part of Article 10 justifies our interpretation, for it says: that the exception, that the effect of Acts passed in a foreign country is regulated by the laws of the country where they are to have effect, does not hold when a citizen of another State of the Union or a citizen or subject of a foreign state or country disposes by will or testament, or by any other act, *causa mortis*, made out of this State, of his movable property situated in this State, if at the time of making said will or testament, or any other other act *causa mortis*, and at the time of his death he resides and is domiciliated out of this State.

The latter part of this Article shows that the word "effect" has no reference to the form or character of the Act, but only to the result and consequence of the Act.

Article 483 C. C. confirms this interpretation of Article 10 : "Absolute ownership gives the right to enjoy and to dispose of one's property in the most unlimited manner, provided it is not used in a way *prohibited by laws* or *ordinances:* persons who reside out of the State cannot dispose of the property they possess here in a *manner* different from that prescribed by its laws.

The signification of the words "in a *manner* different" &c. is, that the foreign Act cannot transfer property in Louisiana to other persons than to those who are entitled to it by the laws of this State.

The principle of comity and convenience requires that a contract made according to the laws of a foreign state should be carried into effect, if it does not clash with the positive legislation of our State, and it would be unjust to interpret contracts different from the intention of the contracting parties; and this would be the case if what would be a mortgage by the laws of the State where it is passed should be by the laws of our State an obligation, to take effect immediately, but with a resolutory condition, (2016 C. C.) and on that account be considered by our courts a present sale with a resolutory condition.

The way to arrive then at a just conclusion in this case is to inquire whether the act from *Scott* to *Ruderstein* is a mortgage or sale by the laws of Mississippi where it was passed.

By the common law which prevails it that State this act is a mortgage, and as there is no sacramental form of mortgage in Louisiana, and this act does not violate any of the provisions of our laws, effect ought then to be given to the intention of the parties and it ought to be considered a mortgage, although, by the provisions of our Code, it might be viewed as a sale with a resolutory condition.

No injustice is done to any party, because the act of *Scott* to *Ruderstein* was on record in the parish where the land was located, and parties had it in their power to examine the effect of this act.

For these and the reasons adduced by Chief Justice MERRICK I concur in his opinion.

SPOFFORD, J., dissenting. "The effect of Acts passed in one country to have effect in another country, is regulated by the laws of the country where they are to have effect." C. C. 10.

No independent State permits its land titles to be governed by a foreign system of laws. Lands can only be transmitted, conveyed and hypothecated according to the *lex loci rei sitae*. Any Act or instrument purporting to affect in any way lands situated in this State is to be interpreted by our law exclusively, even though the Act was passed in a foreign State it cannot be construed by the foreign law.

I believe this to be the just and sound rule, and that it has been generally adopted in civilized States as being essential to maintain the sovereignty of each within its own territorial limits and the purity of land titles. If a deed touching lands in Louisiana were made in China, that deed must be construed by the law of Louisiana alone, and the law of China would be nothing to the purpose. It is the same with a deed made in Mississippi concerning lands here. In this matter, Louisiana and Mississippi are independent sovereignties, foreign to each other.

To one who had never read the system of law which prevails in Mississippi but who was versed in the law of Louisiana, the instrument in question would present no difficulty. It is an obligation to take effect immediately, but coupled with an express resolutory condition; C. C. 2016. It is a present sale of the land, defeasible, however, by the vendor when he shall fulfil a certain duty. Until that condition is fulfilled the vendee is clothed with the title—he is master of the thing; as such he can maintain a petitory action, or an action of partition. The deed was recorded in the proper office.

It is only by looking at it through the law of Mississippi that this instrument assumes another hue; but that medium can serve only to distort and mislead, for our lands are not to pass according to the forms and theories of Mississippi law.

So far as my researches have gone this is the first case in which the legal character of a conveyance of Louisiana lands has been fixed by a foreign law.

*Hayden* v. *Nutt*, 4 An. 71, was decided by the rules of our Code, on the ground that the contract "was *in its terms* an accessory contract intended for the assurance of the payment of a principal contract." The court said the instrument fell within the definition of a conventional mortgage given in our Code, because on its face and before purporting to convey anything, the Act proclaimed that it was made for the "consideration of *securing* to *David Dawson* the payment of four notes, &c."

*Smoot* v. *Russell*, 1 N. S. 523, related to *slaves* who were in Alabama at the time the contract relative to them was made there. It has no bearing upon the present case. The court expressly declined deciding whether the contract was a sale or a mortgage, although it quoted an expression in the beginning of the Act, declaring that it was made "for the better *security* of the plaintiffs, and to indemnify them against all loss, or against the payment" of a certain note, &c.

Here the deed was executed and the land has passed into the hands of a third person upon the faith of the recorded deed, this deed is, upon its face, translative of property, and not a mere security; it has a dissolving condition reserved to the vendor; he is an intervenor in this cause, and does not pretend, even in his pleadings, that the condition has happened, that he has done what he reserved to himself the liberty to do in order to defeat his most formal conveyance. There is no equity in his favor, and I think the law sustains the judgment appealed from.

Mr. Justice VOORHIES concurs in this opinion.